**REVERSE and ACQUIT; and Opinion Filed March 25, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-13-01010-CR**

**DAVID CARY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-81636-2011**

## OPINION

Before Justices Bridges, Lang-Miers, and Myers
Opinion by Justice Lang-Miers

Appellant David Cary was charged with eight felonies—six counts of bribery, one count of money laundering, and one count of engaging in organized criminal activity. After finding appellant guilty as charged, the jury assessed concurrent sentences of fourteen years in prison for each offense. On appeal appellant argues that (1) the evidence is legally insufficient to support his convictions, (2) he received ineffective assistance of counsel, and (3) the bribery statute is unconstitutional. We conclude that the State's evidence is legally insufficient to support appellant's convictions. We reverse the trial court's judgments and render judgments of acquittal.

### BACKGROUND

Appellant's convictions arise from the same evidence presented by the State in the previous trial of his wife, Stacy Stine Cary. We described all of the evidence at great length in

our opinion in Stacy Cary's appeal. *See Cary v. State*, No. 05-12-01421-CR, 2014 WL 4261233 (Tex. App.—Dallas Aug. 28, 2014, pet. granted) (not designated for publication). Because the parties agree that the records in both cases are nearly identical,[1] we do not re-describe all of the evidence again here. Instead, we discuss pertinent evidence below as it pertains to the issues we must decide in this appeal.

## ISSUES ON APPEAL

Appellant raises six issues on appeal (several of which are different from the issues raised in Stacy Cary's appeal). In his first issue, appellant argues that the evidence is legally insufficient to support his bribery convictions because (1) the State's evidence proved an exception to the bribery statute, (2) there was no evidence of consideration, and (3) there was no evidence of intent. In his second issue, appellant argues that the evidence is legally insufficient to support his conviction for engaging in organized criminal activity because there was insufficient evidence of the alternative predicate offenses of bribery, money laundering, and tampering with a governmental record. In his third issue, appellant argues that the evidence is legally insufficient to support his conviction for money laundering because there was insufficient

---

[1] According to the State, the records are "materially identical." According to appellant, the only difference is that the following additional evidence was presented in appellant's case only:

- The jury heard evidence that the judge who was appointed to preside over appellant's modification proceeding after Suzanne Wooten recused herself made decisions in favor of appellant, including ordering that the children should live with appellant.

- James Stephen Spencer explained and put into context the email exchange between him and appellant dated June 9, 2009, concerning the Supreme Court's June 8, 2009 decision in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009). Spencer testified that the reason he was interested in the *Caperton* decision was because of his ongoing concerns about the Family Law Foundation's potential influence over a judge in Tarrant County.

- The jury heard evidence that Wooten planned to voluntarily recuse herself in cases in which a party was represented by someone from her former law firm for approximately nine months after she separated from her firm, and the motion to recuse Wooten in Stacy Cary's case against Jennifer Cary was filed around the time her self-imposed decision to recuse was supposed to expire.

- Rick Robertson testified that while Wooten was on the bench he "found her to be a judge to follow the law," and there was nothing about her rulings that would suggest that she had been bribed.

- Two witnesses for the State testified that Wooten was ethical and had a strong reputation for ethics.

evidence of the sole predicate offense of bribery.  In his fourth issue, appellant argues that he received ineffective assistance of counsel because his counsel admittedly failed to timely amend appellant's sentencing election so that punishment could be assessed by the trial court, which caused appellant to receive a longer sentence.  In his fifth issue, appellant argues that the bribery statute is unconstitutional as applied because it impermissibly burdened his First Amendment right to exercise political speech.  In his sixth issue, appellant argues that the bribery statute is facially unconstitutional because it is vague and overbroad.  We only address appellant's first three issues because our resolution of those issues is dispositive of this appeal.

STANDARD OF REVIEW

In evaluating the legal sufficiency of the evidence to support a criminal conviction, "reviewing courts are obliged to view all of the evidence in the light most favorable to the jury's verdict, in deference to the jury's institutional prerogative to resolve all contested issues of fact and credibility."  *Delay v. State*, 443 S.W.3d 909, 912 (Tex. Crim. App. 2014).  But sometimes, as in this case, "appellate review of legal sufficiency involves simply construing the reach of the applicable penal provision in order to decide whether the evidence, even when viewed in the light most favorable to conviction, actually establishes a violation of the law."  *Id.*

BRIBERY

**Applicable Law**

The bribery statute at issue in this case provides as follows:

(a) A person commits an offense if he intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another:

> (1) any benefit as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant, party official, or voter;

> (2) any benefit as consideration for the recipient's decision, vote, recommendation, or other exercise of official discretion in a judicial or administrative proceeding;

–3–

(3) any benefit as consideration for a violation of a duty imposed by law on a public servant or party official; or

(4) any benefit that is a political contribution as defined by Title 15, Election Code, or that is an expenditure made and reported in accordance with Chapter 305, Government Code, if the benefit was offered, conferred, solicited, accepted, or agreed to pursuant to an express agreement to take or withhold a specific exercise of official discretion if such exercise of official discretion would not have been taken or withheld but for the benefit; notwithstanding any rule of evidence or jury instruction allowing factual inferences in the absence of certain evidence, direct evidence of the express agreement shall be required in any prosecution under this subdivision.

(b) It is no defense to prosecution under this section that a person whom the actor sought to influence was not qualified to act in the desired way whether because he had not yet assumed office or he lacked jurisdiction or for any other reason.

(c) It is no defense to prosecution under this section that the benefit is not offered or conferred or that the benefit is not solicited or accepted until after:

(1) the decision, opinion, recommendation, vote, or other exercise of discretion has occurred; or

(2) the public servant ceases to be a public servant.

(d) It is an exception to the application of Subdivisions (1), (2), and (3) of Subsection (a) that the benefit is a political contribution as defined by Title 15, Election Code, or an expenditure made and reported in accordance with Chapter 305, Government Code.

(e) An offense under this section is a felony of the second degree.

TEX. PENAL CODE ANN. § 36.02 (West 2011) (internal footnote omitted).

**The Indictment**

The indictment charged appellant with bribery in counts two through seven in connection with six separate payments from Stacy Cary to James Stephen Spencer, Suzanne Wooten's campaign manager. For example, count two alleged that appellant,

on or about January 4, 2008, . . . did then and there intentionally and knowingly offer, confer, and agree to confer a benefit, other than a political contribution as defined by Title 15, Election Code, or an expenditure made and reported in accordance with Chapter 305 of the Government Code, to-wit: $50,000 to Suzanne H. Wooten, a public servant, to-wit: a candidate for the office of Judge of the 380th Judicial District Court and presiding Judge of the 380th Judicial District Court, as consideration for Suzanne H. Wooten's decision, opinion,

recommendation, vote, or other exercise of discretion as a public servant, and as consideration for Suzanne H. Wooten's decision, vote, recommendation, and other exercise of official discretion in a judicial proceeding, to wit: filing paperwork to run for Judge, proceeding and continuing with a campaign to unseat the incumbent elected Judge of the 380th Judicial District Court, and as Judge of the 380th Judicial District Court presiding over and issuing favorable rulings in cases in which [appellant] and Stacy Stine Cary are parties[.]

The allegations in the other five bribery counts differed only with respect to the date and amount of the transfer. The payments totaled $150,000 and occurred between January 4 and March 14, 2008. The jury charge tracked the indictment and instructed the jury that appellant could be found guilty as a principal or as a party to the offenses of bribery.

**Analysis**

Appellant was charged with bribery under penal code sections 36.02(a)(1) and 36.02(a)(2). As a result, the exception for political contributions found in section 36.02(d) applies, and under section 2.02(b) of the penal code,[2] it was the State's burden to prove beyond a reasonable doubt that the benefits to Wooten, in this case the payments to Spencer, were something other than political contributions. In his first issue, appellant argues that the evidence is legally insufficient to support his bribery convictions because the State failed to satisfy that burden. We agree.

We begin by looking to the relevant definitions in Title 15 of the Texas Election Code. Shown in context, the relevant provisions of the election code provide:

(2) "**Contribution**" means a direct or **indirect transfer of money**, goods, services, or any other thing of value and includes an agreement made or other obligation incurred, whether legally enforceable or not, to make a transfer. The term includes a loan or extension of credit, other than those expressly excluded by this subdivision, and a guarantee of a loan or extension of credit, including a loan described by this subdivision. The term does not include:

---

[2] Section 2.02(b) of the penal code states, "The prosecuting attorney must negate the existence of an exception in the accusation charging commission of the offense and prove beyond a reasonable doubt that the defendant or defendant's conduct does not fall within the exception." TEX. PENAL CODE ANN. § 2.02(b) (West 2011).

(A) a loan made in the due course of business by a corporation that is legally engaged in the business of lending money and that has conducted the business continuously for more than one year before the loan is made; or

(B) an expenditure required to be reported under Section 305.006(b), Government Code.

(3) "**Campaign contribution**" means a **contribution to a candidate** or political committee that is **offered or given with the intent that it be used in connection with a campaign for elective office** or on a measure. Whether a contribution is made before, during, or after an election does not affect its status as a campaign contribution.

(4) "Officeholder contribution" means a contribution to an officeholder or political committee that is offered or given with the intent that it be used to defray expenses that:

(A) are incurred by the officeholder in performing a duty or engaging in an activity in connection with the office; and

(B) are not reimbursable with public money.

(5) "**Political contribution**" means **a campaign contribution** or an officeholder contribution.

(6) "Expenditure" means a payment of money or any other thing of value and includes an agreement made or other obligation incurred, whether legally enforceable or not, to make a payment.

(7) "Campaign expenditure" means an expenditure made by any person in connection with a campaign for an elective office or on a measure. Whether an expenditure is made before, during, or after an election does not affect its status as a campaign expenditure.

TEX. ELEC. CODE ANN. § 251.001(2)–(7) (West 2010) (emphasis added).

Boiled down, the State's theory in this case was that the Carys secretly funded Wooten's campaign for elective office. And the only evidence of a benefit to Wooten in this case was that Stacy Cary gave money to Spencer and Spencer used it in connection with Wooten's campaign. During opening statements, for example, the State told the jury,

Without Stacy Cary's money that was given to Stephen Spencer, Suzanne Wooten does not win. Suzanne Wooten spends money on signs. She spends money on radio ads. She spends money on print ads. She spends money on direct mailers. She hires a consultant. None of these things are possible without the money being given to her.

–6–

During its case in chief, the State proved its theory through testimony and documentary evidence. During Spencer's direct examination by the State, for example, he repeatedly acknowledged that he used the money he received from Stacy Cary to pay for Wooten's campaign expenditures. Spencer's testimony was consistent with State's Exhibit 94, a compendium exhibit created by the State's fraud examiner, Kyle Swihart. Exhibit 94 shows the timing of the payments from Stacy Cary to Spencer, and which campaign expenses were paid using the money. Swihart testified at length about the evidence summarized in State's Exhibit 94. For example, with respect to the transfer of $50,000 from Stacy Cary to Spencer on January 4, Swihart explained that it was immediately used to pay Wooten's campaign consultant, Hank Clements:

Q. All right. We've got these two payments to Hank Clements totaling $15,000, which happen to be just a few days after this $50,000 comes in. Absent this money from Stacy Cary, does Stephen Spencer have the money to pay for Hank Clements?

A. No.

Q. And absent this money from Stacy Cary, does Suzanne Wooten's campaign have the money to pay for Hank Clements?

A. No.

With respect to the transfer of $25,000 from Stacy Cary to Spencer on February 4, Swihart testified that it was used to pay for additional campaign expenditures:

Q. Okay. And then there's another -- appears to be another transfer from Stacy Cary?

A. Yes, of $25,000 that posted to his account on February 4th of 2008.

Q. All right. Now, after that post[ed] to his account, does he cut several more cashier's checks?

A. Yes, he does.

Q. Can you tell us what those cashier's checks are?

A. It would be the Plano Profile cashier's check on February 5th.

–7–

Q. Okay.

A. The Cartwright Signs check on February 5th. Actually both of those together there for $3877 and $4036. And then the last Cartwright expenditure on February 8th of 2008.

Q. All right. So, absent this $25,000 from Stacy Cary, does Stephen Spencer have the funds to get these cashier's checks?

A. No, he does not.

Likewise, with respect to the transfer of $25,000 from Stacy Cary to Spencer on February 15, Swihart testified that it was used to pay campaign expenditures:

Q. Okay. Now, the next thing I'd like to ask you about is this next transfer from Stacy Cary.

A. The one on February 15th?

Q. Yes, sir. Can you tell me about that?

A. That is another transfer that occurred. I believe that one may have been via check. And that occurred on February 15th.

Q. Okay. And so his balance after that transfer of $25,000 is how much?

A. It's $25,000.92.

Q. And so that occurs on the 15th. And on the 20th, does he draw two checks?

A. Yes, he does.

Q. Okay. And what are those checks for?

A. Those are for radio ads for KVIL and KRLD.

Q. And absent this $25,000 that he receives from Stacy Cary, does he have the funds to pay for these advertisements?

A. No, he does not.

Q. Okay. And absent this $25,000 from Stacy Cary, does the Suzanne Wooten Campaign account have the funds to pay for these advertisements?

A. No.

Finally, during closing argument, the State told the jury that Stacy Cary's money was not a political contribution because it "never goes into [Wooten's] account. It's never reported."

The State argues on appeal that the payments to Spencer for Wooten's benefit should not be considered political contributions because the evidence demonstrates that appellant "deliberately engaged in several deceptive practices to prevent the funds from being traced to him." We must confine our analysis, however, to the definitions found in the election code. And under the definition of "political contribution" in the election code, no exception is made for covert indirect transfers of money.

Additionally, under the applicable definitions in the election code, the money did not need to be transferred directly to Wooten's campaign account, nor did it need to be properly reported in Wooten's campaign filings, in order for it to constitute a political contribution. Instead, if Stacy Cary transferred money to Spencer with the intent that it be used in connection with Wooten's campaign, then, by definition, the money is a political contribution.

The State also argues that a conclusion that the benefits to Wooten were political contributions would lead to an absurd result because it would mean that anyone could covertly and indirectly fund a judge's campaign in exchange for the candidate's agreement to rule in his favor, as long as there is no evidence of an express agreement. We disagree. We are not sanctioning the conduct in this case, nor are we concluding that it was lawful. Instead, we conclude that the State did not satisfy its burden under the specific language in section 36.02 of the penal code and Title 15 of the election code. *See* TEX. PENAL CODE ANN. § 36.02; TEX. ELEC. CODE ANN. § 251.001(2)–(7).

The State also argues that a rational jury could have found that appellant did not intend for the transfers to Spencer to be used in connection with Wooten's campaign, and instead intended that the payments to Spencer "be used to obtain, by any means necessary, (1) a person

–9–

who would challenge the incumbent judge of the 380th Judicial District Court, despite the odds stacked against succeeding in such a challenge, and/or (2) a judge who would rule favorably in Appellant's custody and visitation proceedings, and/or rule in favor of his wife Stacy." The State contends that because of a difference between the amount Spencer spent on Wooten's campaign and the amount she reimbursed him, the jury could have inferred "that Appellant had no specific intent that every payment made by his wife be used specifically in connection with the campaign." But the State charged appellant with bribing Wooten, the State's theory was that the Carys funded Wooten's campaign, and the jury was asked whether the payments were made to Wooten as consideration for various actions on her part, including issuing rulings favorable to the Carys.

We recognize that the majority did not reach this conclusion in *Cary*. *See* 2014 WL 4261233, at *33–34. In that appeal, however, Stacy Cary did not raise the same issues as those presented here. For example, Stacy Cary did not raise the issue of whether the State failed to prove that the transfers from her to Spencer were not political contributions. Instead, Stacy Cary affirmatively argued in her appeal that the transfers to Spencer were compensation for services rendered under a consulting agreement. And the majority's discussion of unassigned error raised by the dissent was obiter dictum and not material to the majority's resolution of Stacy Cary's appeal.

We conclude that the State's evidence proved that the only benefits to Wooten were the transfers from Stacy Cary to Spencer, which the State argued were payments made to fund her campaign. As a result, the State did not meet its burden to prove bribery beyond a reasonable

–10–

doubt by something other than a political contribution.[3]  We resolve appellant's first issue in his favor, reverse the convictions for bribery, and render judgments of acquittal.

## MONEY LAUNDERING

A person commits the offense of money laundering if he "knowingly finances or invests or intends to finance or invest funds that the person believes are intended to further the commission of criminal activity."  TEX. PENAL CODE ANN. § 34.02(a)(4) (West 2011).  In this case the State alleged that appellant,

> on or about and between January 4, 2008 and March 14, 2008, . . . did then and there, pursuant to one scheme and continuing course of conduct, knowingly finance, invest, and intend to finance and invest funds that [appellant] believed were intended to further the commission of criminal activity, to-wit: Bribery, and the aggregate value of said proceeds was $100,000 or more but less than $200,000[.]

In his third issue, appellant argues that the evidence is legally insufficient to support his conviction for money laundering because there is "insufficient evidence of the only predicate offense—bribery."  The State was not required to prove bribery in order to convict appellant of money laundering.  Instead, the State was only required to prove that appellant believed he was furthering the commission of bribery.  But in this case, the State's only evidence was that appellant believed Stacy Cary was making what constitutes political contributions under the election code.  And the political contributions Stacy Cary made are subject to the exception under the bribery statute.  As a result, there is no evidence that appellant believed he was furthering the commission of bribery.  We resolve appellant's third issue in his favor, reverse the conviction for money laundering, and render a judgment of acquittal.

---

[3] Because we conclude that the exception to the bribery statute was not negated, we do not need to address appellant's alternative arguments that the evidence is legally insufficient to support his bribery convictions because there is no evidence of consideration or intent.

A person commits the offense of engaging in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, . . . the person commits or conspires to commit one or more [enumerated offenses]." *See* TEX. PENAL CODE ANN. § 71.02(a) (West Supp. 2014). In this case the State alleged that appellant engaged in organized criminal activity by committing or conspiring to commit three predicate offenses: bribery, money laundering, and tampering with a governmental record. *See id*. §§ (9) (bribery), (10) (money laundering), (13) (tampering with a governmental record).

We have concluded that the evidence is insufficient to support the convictions for bribery and money laundering; consequently, those predicate offenses will not support the conviction for engaging in organized criminal activity. The sole remaining alleged predicate offense is tampering with a governmental record.

**The Indictment**

In the indictment the State alleged that appellant engaged in organized criminal activity by tampering with a governmental record as follows:

> on or about and between September 19, 2007 and October 20, 2009, . . . with intent to establish, maintain, and participate in a combination and in the profits of a combination of three or more persons, namely, [appellant], Suzanne H. Wooten, Stacy Stine Cary, and James Stephen Spencer, did commit and conspire to commit the following offenses:
>
> • • •
>
> **Tampering with a Government Record**, in that Suzanne H. Wooten did then and there, with the intent to defraud and harm another, namely, the State of Texas, the Texas Ethics Commission, and the citizens of Texas, intentionally and knowingly make, present, and use a governmental record with knowledge of its falsity, to-wit: prepared, swore, and affirmed a Personal Financial Statement that was submitted to the Texas Ethics Commission and did not list and report all gifts and loans, as required by Texas Government Code Sec. 572.023, omitting [appellant], Stacy Stine Cary, and James Stephen Spencer under the heading "Gifts," and the heading "Personal Notes and Lease Agreements," when in truth

and fact [Wooten] had received gifts and loans from [appellant], Stacy Stine Cary, and James Stephen Spencer during the calendar year 2008;

and in furtherance of the conspiracy to commit said offenses [appellant] performed one or more overt acts, to-wit: communicated with other members of the combination, and organized, planned, and supervised the other members of the combination . . . .

*See id.* §§ 37.10(a)(5), 71.02(a)(13).

The governmental record at issue here is Wooten's Personal Financial Statement for calendar year 2008 that she filed with the Texas Ethics Commission as part of her judicial campaign. The State argued that appellant, Wooten, and at least one other person committed and conspired to commit tampering with a governmental record, specifically, falsifying Wooten's Personal Financial Statement by omitting loans and gifts she received from appellant, Stacy Cary, and Spencer.

**Applicable Law**

The government code requires a candidate or officeholder to file a Personal Financial Statement and, in that report, to disclose personal loans over $1,000 and personal gifts over $250 made or given to the reporting individual, the reporting individual's spouse, or the reporting individual's dependent child. TEX. GOV'T CODE ANN. § 572.023(a)(5), (7) (West 2012). As charged in this case, a person commits the offense of tampering with a governmental record if the person makes, presents, or uses a Personal Financial Statement with knowledge of its falsity and with intent to defraud or harm another. *See* TEX. PENAL CODE ANN. § 37.10(a)(5); *State v. Vasilas*, 198 S.W.3d 480, 484 (Tex. App.—Dallas 2006), *aff'd*, 253 S.W.3d 268 (Tex. Crim. App. 2008).

"Gift," "personal loan," and "personal note" are not defined in the statute. The ordinary meaning of "gift" is a voluntary transfer of property to another made gratuitously and without consideration. *Magness v. Magness*, 241 S.W.3d 910, 912 (Tex. App.—Dallas 2007, pet.

denied). The elements of a gift are (1) the intent to make a gift; (2) delivery of the property; and (3) acceptance of the property. *Id.* The ordinary meaning of "loan" is "money lent at interest." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1326 (1981). And "note" means "a written or printed paper acknowledging a debt and promising payment." *Id*. at 1544. The State's campaign finance expert, Ian Steusloff, testified that he understood "personal note" to include a "document that states that you agree to pay a specific amount to another person[.]"

**Analysis**

In his second issue, appellant argues that there is no evidence of unreported loans or gifts to Wooten individually; there is no evidence Wooten's Personal Financial Statement was false; and there is no evidence appellant knew about the existence or contents of Wooten's Personal Financial Statement. We agree.

All of the State's evidence, indeed its entire theory, was that the money Stacy Cary transferred to Spencer was used to benefit Wooten's judicial campaign. But the State's ethics expert testified that the Personal Financial Statement applied only to loans and gifts to the candidate, not to the campaign. And the State did not present any evidence that appellant, Stacy Cary, or Spencer directly or indirectly gave money to Wooten individually. In fact, Swihart, the State's fraud expert who investigated this case for four years, agreed that "there's not a single payment that went from either Dave or Stacy Cary to Suzanne Wooten" and "there's not even a situation where there's been a payment from either [of] the Carys to a third party who then turned around and forwarded that money to Judge Wooten[.]" Steusloff testified that he was sitting in the courtroom for a majority of the witnesses' testimony and he had "not heard of any gifts." And he agreed that if there was no evidence Wooten received a gift, then checking "Not Applicable" under "Gifts" on the Personal Financial Statement would be correct.

–14–

Having reviewed the entire record, we conclude that the State did not offer any evidence that appellant, Stacy Cary, or Spencer intended to make a gift of money to Wooten individually, that appellant, Stacy Cary, or Spencer delivered a gift of money to Wooten, or that Wooten accepted a gift of money from appellant, Stacy Cary, or Spencer.

We also conclude that the State did not offer any evidence that appellant, Stacy Cary, or Spencer loaned Wooten money. Wooten's Personal Financial Statement disclosed a loan to Wooten individually from Bank of America, and Swihart testified that "[a]s far as [he knew]" that was the only loan for Wooten's campaign. The State offered no evidence that Wooten signed a personal note in favor of appellant, Stacy Cary, or Spencer. And Steusloff testified that he believed to constitute a personal note "as a minimum, there would need to be a document that said 'I, Suzanne Wooten, promise to pay.'" The State offered no such document. We conclude that the State offered no evidence of a personal note or personal loan to Wooten individually.

Additionally, the State did not offer any evidence that appellant knew about the Personal Financial Statement, knew Wooten had to file such a statement, knew what the statement was required to include, or knew what Wooten disclosed when she filed it. The State concedes that there is "no direct evidence of [a]ppellant's knowledge of Wooten's campaign records or record filing requirements," but it argues that the jury could have inferred based on appellant's "blatant disregard for complying with any [reporting] restrictions [that] [a]ppellant must have intended for Wooten to omit him, his wife, and/or Spencer from her Personal Financial Statement as the bulk of her campaign resources." Based on this record, any such inference amounts to mere surmise or suspicion.

We conclude that the State offered no evidence that Wooten's Personal Financial Statement omitted alleged loans and gifts from appellant, Stacy Cary, or Spencer because there is no evidence of loans or gifts from them to Wooten individually. We further conclude that the

–15–

State offered no evidence of appellant's knowledge that Wooten allegedly falsified her Personal Financial Statement. Because there is no evidence to support any of the alleged predicate offenses, the conviction for engaging in organized criminal activity cannot stand. We resolve appellant's second issue in his favor, reverse the conviction for engaging in organized criminal activity, and render a judgment of acquittal.

## CONCLUSION

We conclude that the evidence is legally insufficient to sustain appellant's convictions for bribery, money laundering, and engaging in organized criminal activity. We reverse appellant's convictions and render judgments of acquittal. As a result, we do not need to address appellant's remaining arguments.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Publish
TEX. R. APP. P. 47.2(b)

131010F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAVID CARY, Appellant

No. 05-13-01010-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District Court, Collin County, Texas

Trial Court Cause No. 366-81636-2011.

Opinion delivered by Justice Lang-Miers.

Justices Bridges and Myers participating.


Based on the Court's opinion of this date, the judgments of the trial court are **REVERSED** and the appellant is hereby **ACQUITTED**.


Judgment entered this 25th day of March, 2015.