**Joe MARTINEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–84–191–CR.**

Court of Appeals of Texas,
Austin.

Aug. 28, 1985.

James R. Mattison, Georgetown, for appellant.

Ken Anderson, Dist. Atty., Georgetown, for appellee.

Before POWERS, EARL W. SMITH and CARROLL, JJ.

EARL W. SMITH, Justice.

A jury found appellant guilty of bribery and assessed punishment at imprisonment for five years. Tex.Pen.Code Ann. § 36.-02(a)(1) (Supp.1985). The sole issue on appeal is whether the evidence is sufficient to sustain the judgment of conviction. We find that it is.

Appellant was tried on an indictment alleging that he:

intentionally and knowingly solicit[ed] and agree[d] to accept and accept[ed] from Pedro Zepeda a benefit, to-wit: United States currency, as consideration for the said defendant's decision as a public servant to-wit: a Round Rock, Texas police officer concerning to-wit: whether or not to issue the said Pedro Zepeda citations for driving without a license and driving without insurance.

The alleged act of bribery took place after appellant had stopped an automobile being driven by Zepeda in an erratic manner shortly after midnight on December 14, 1983.

In his testimony at trial, Zepeda described what happened after he was stopped by appellant:

Q: [by assistant district attorney] That's where he asked you for your license and your driver's—driver's license and insurance?

A: Yes.

Q: What did you do when he asked you for them?

A: I told him I didn't have them.

Q: What did he say?

A: He asked me if I knew that was real expensive.

Q: What did you say?

A: I told him yes, I did.

Q: What did he say?

A: Told him [sic] I would need money to pay the tickets.

Q: He told you that?

A: He told me that.

Q: What did you say?

A: I told him no, but to give me the ticket and I would pay it later.

A: What did he say?

Q: How much money I had on me.

Q: What did you tell him?

A: That I only had $50 on me.

Q: Is that all you had on you?

A: Yes.

Q: What did he say when you told him you only had $50?

A: That I had to pay everything to him.

Q: And then what happened?

A: I told him that the friend that I was going to see could loan me the other hundred dollars.

Q: What did he say?

A: That I should go get the money and that he would wait for me there at the police station in Round Rock.

Q: Now, who first mentioned a hundred and fifty dollars?

A: He.

Q: Did he give you any tickets at that time?

A: No.

Q: Did he let you go?

A: Yeah, he left to go to the office, and I went to my friend's house so that he would loan me the money.

After borrowing $100 from his friend, Zepeda went to the Round Rock police station and met appellant in an interview room. There, Zepeda gave appellant $150. According to Zepeda, appellant kept the money, but issued no citations and gave him no receipt.

Later that day, Zepeda reported this incident to his probation officer, Esperanza Tamez.[1] Tamez, in turn, contacted Chris Bratton, head of the Criminal Investigations Division of the Round Rock Police Department. On December 19, as part of his investigation, Bratton recorded a telephone conversation between Zepeda and appellant. During this conversation, a transcription of which was introduced in evidence, appellant assured Zepeda that no citations had been issued and no report made to the probation department. Referring to the December 14 incident, appellant told Zepeda, "[I]f you want to tell [the probation officer] you can't, you don't have to tell, of course if you want to tell, it's okay," and "[Y]ou already paid for that, that has nothing to do with the court." As the telephone conversation concluded, appellant again said, "And that thing, you don't have to say anything."

In his own testimony, appellant admitted stopping Zepeda and later meeting him at the police station. Appellant explained that Zepeda told him after being stopped that he had information concerning a man wanted by the police in connection with a homicide, and that the meeting at the police station was for the purpose of questioning Zepeda in this regard. Appellant decided not to issue traffic citations to Zepeda in exchange for this information. At one point during his questioning of Zepeda at the station, appellant threatened to issue the citations because he believed Zepeda was not telling all he knew. Zepeda then handed appellant $150 in cash. Appellant

1. Zepeda, an illegal alien with limited education who speaks little or no English, was on probation following a misdemeanor conviction for driving while intoxicated.

testified he took the money and left the room to get a receipt, but then changed his mind and returned the money to Zepeda. During cross-examination, appellant admitted that when he was first questioned concerning this incident, he withheld the fact that Zepeda had offered him money.

In determining the sufficiency of the evidence to support a criminal conviction, the question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1974); *Carlsen v. State*, 654 S.W.2d 444 (Tex.Cr.App.1983) (opinion on State's motion for rehearing). In this case, Zepeda's testimony and the other evidence offered by the State is sufficient to establish that appellant asked for, received, and kept $150 from Zepeda, and appellant does not argue otherwise. Appellant does argue, however, that the evidence is insufficient to establish that he solicited, agreed to accept, or accepted the money as consideration for his decision not to issue the traffic citations. In support of this contention, appellant cites the following testimony by Zepeda during cross-examination:

Q: Did you pay him with the understanding that he was going to take care of these tickets?

A: No, I only gave him the money because he said that's what the ticket for the license and the insurance was.

Q: But you didn't ask for a receipt?

Q: No, at that time I didn't because I had asked for one before and he wouldn't give it to me.

Q: Did you assume that he would keep the money himself?

A: No, I thought it was for the tickets of the license and the insurance.

Appellant asserts that because Zepeda thought he was paying his fines for the traffic offenses rather than a benefit as consideration for the non-issuance of the citations, the evidence is insufficient to sustain the conviction.

There is some support for appellant's argument in the decision in *McCallum v. State*, 686 S.W.2d 132 (Tex.Cr.App.1985), decided after the briefs were filed in this cause. In *McCallum*, the defendant was convicted of bribery pursuant to an indictment that alleged he conferred a benefit as consideration for the recipient's vote as a juror in a judicial proceeding. The Court of Criminal Appeals, after considering the legislative history and wording of the bribery statute, held:

[W]e construe the offense, particularly where it alleges the accused intentionally or knowingly conferred "a benefit as consideration for" ... as requiring a bilateral arrangement—in effect an illegal contract to exchange a benefit as consideration for the performance of an official function.

686 S.W.2d at 136. Because there was no evidence of a bilateral agreement between the defendant and the recipient of the benefit, the court reversed the conviction and ordered a judgment of acquittal.

After careful consideration, we find that *McCallum* is factually and legally distinguishable from the instant cause. In *McCallum*, the indictment alleged only that the defendant conferred the benefit on the recipient. Under that indictment, proof that the defendant offered the alleged benefit was not sufficient to convict. The instant indictment, on the other hand, alleges that appellant solicited, agreed to accept, and accepted the benefit from Zepeda, and the jury was properly instructed that proof of any one of the three alleged acts would warrant conviction. *Vasquez v. State*, 665 S.W.2d 484 (Tex.Cr.App.1984). Thus, it was not necessary for the State to prove that appellant agreed to accept or accepted the alleged benefit, and evidence that appellant merely solicited the benefit will support the conviction.

Under § 36.02, a person commits the offense of bribery if he intentionally or knowingly offers or solicits a benefit as consideration for a variety of official acts or omissions. Common sense dictates that

when it is alleged and proved that the defendant offered or solicited a proscribed benefit, it is not necessary to further prove that the offer or solicitation resulted in a bilateral arrangement or unlawful contract with the other party. The offense of bribery is complete when the offer or solicitation is made.

The relevant language of § 36.02 was taken verbatim from § 240.1 of the Model Penal Code. In Model Penal Code § 240.1, Comment 4(a) (Official Draft and Revised Comments, 1980), it is stated:

> The offense of bribery is defined in a manner that includes a completed agreement between the person who offers the bribe and the person who receives it. It also permits prosecution of inchoate conduct intended to achieve that objective. The terms "offers" and "solicits" clearly refer to such inchoate behavior and are designed to include what might be regarded as an attempt to give or to receive a bribe.

.    .    .    .    .

In the context of bribery, one who "solicits" a benefit "as consideration for" his official conduct is thus one who, with the purpose to promote or facilitate his receipt of a benefit in exchange for his official action, commands, encourages, or requests another person to supply the benefit. . . .

The solicitation aspect of the offense is thus, in effect, a crime of purpose; the actor must have as his conscious objective the receipt of a benefit as consideration for official conduct on his part. The term "offers" as it applies to the bribe giver similarly implies purposeful conduct.

■ We hold that where it is alleged the accused offered or solicited a benefit as consideration for an official act, it is not necessary for the State to prove the party to whom the offer or solicitation was made accepted the proposition or even understood the unlawful nature of the proposition; proof that the offer or solicitation was made by the accused with the purpose to promote or facilitate the exchange of the benefit for the official action is all that is required. Under *McCallum,* proof of a bilateral arrangement between the defendant and the other party is necessary only where, as in that case, the State is required by the allegations of the charging instrument to prove that the benefit was in fact conferred or accepted.[2]

■ The evidence is sufficient to establish beyond a reasonable doubt that appellant solicited $150 from Zepeda, and that appellant had as his conscious objective the receipt of this money as consideration for his decision as a police officer not to issue Zepeda citations for driving without a license and without insurance. The evidence

**2.** We note that the *McCallum* court's understanding of the "as consideration for" language found in § 36.02 and in Model Penal Code § 240.1 is not that of the model code commentators. In § 240.1, Comment 4(b), *supra,* it is stated:

> The bribery offense also extends to one who "agrees to confer" or who "agrees to accept" a benefit as consideration for official action. These terms are subject to an analysis similar to that made above in connection with "offer" and "solicit." . . . It is sufficient if the actor believes that he has agreed to confer or agreed to accept a benefit for the proscribed purpose, regardless of whether the other party actually accepts the bargain in any contract since.

Similarly, in § 240.1, Comment 4(c), *supra,* it is stated:

> Given the established applicability of the bribery offense to inchoate behavior, it would be possible to construe "confers" and "accepts" as signifying a completed bilateral arrangement—in effect an illegal contract to exchange a benefit as consideration for the performance of an official function. To do so, however, would impose a burden of proof on the prosecution that seems wholly unwarranted. The evils of bribery are fully manifested by the actor who *believes* that he is conferring a benefit in exchange for official action, no matter how the recipient views the transaction. . . . It is wholly appropriate, therefore, to view the action of conferring a benefit or accepting a benefit entirely from the point of view of the actor. If he meant to confer a benefit as consideration for official action or to accept a benefit for that purpose, the offense of bribery is complete. [emphasis in original]

is therefore sufficient to sustain the judgment of conviction.

The judgment of conviction is affirmed.

CARROLL, J., not participating.