PD-0445-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/17/2015 3:41:32 PM
Accepted 8/18/2015 8:10:48 AM
ABEL ACOSTA
CLERK

No. PD-0445-15

_____

IN THE COURT OF CRIMINAL APPEALS
OF TEXAS

_____

THE STATE OF TEXAS,
Appellant,

v.

DAVID FREDERICK CARY,
Appellee.

_____

From the Court of Appeals, Fifth District of Texas at Dallas
Court of Appeals No. 05-13-01010-CR

_____

**STATE'S BRIEF**

_____

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

ADRIENNE McFARLAND
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

**\*Lead Appellate Counsel**

**\*JOSEPH P. CORCORAN**
Assistant Attorney General
Supervising Attorney
for Non-Capital Appeals
State Bar No. 00793549
Joseph.Corcoran@TexasAttorneyGeneral.gov

CARA HANNA
Assistant Attorney General

P. O. Box 12548, Capitol Station
Austin, Texas 78711
Telephone: (512) 936-1400
Facsimile: (512) 936-1280

_____

ATTORNEYS FOR THE STATE

# IDENTITY OF PARTIES AND COUNSEL

To assist this Honorable Court in determining disqualification and recusal, the State certifies the following is a complete list of the parties and their attorneys in accordance with Texas Rule of Appellate Procedure 38.1(a).

1.   **Counsel for the State**
     JOSEPH P. CORCORAN (this proceeding)
     Assistant Attorney General
     Texas Bar Number 00793549

     CARA HANNA (Dallas Court of Appeals)
     Assistant Attorney General
     Texas Bar Number 240556-22

     GRETCHEN MERENDA (Dallas Court of Appeals)
     Assistant Attorney General
     Texas Bar Number 24010233

     ELIZABETH GOETTERT (Dallas Court of Appeals)
     Assistant Attorney General
     Texas Bar Number 24036646

     CATHY E. CHOPIN (trial court)
     Assistant Attorney General
     Texas Bar Number 24055307

HARRY WHITE (trial court)
(former) Assistant Attorney General
Texas Bar Number 24013740

P. O. Box 12548, Capitol Station
Austin, Texas  78711

2.   **Appellee**
DAVID CARY

3.   **Counsel for Appellee on appeal**
JOHN M. HELMS
Texas Bar Number 09401001
Broden, Mickelsen, Helms & Snipes LLP
2600 State Street
Dallas, TX 75204

4.   **Counsel for Appellee at trial**
KERRY LAWSON PEDIGO
Texas Bar Number 15716500
8401 North Central Expressway
Suite 630
Dallas, Texas, 75225

5.   **Trial Court Judge**
THE HONORABLE JOHN R. NELMS

## TABLE OF CONTENTS

                                         **Page**

IDENTITY OF PARTIES AND COUNSEL ..............................................ii

TABLE OF CONTENTS ...........................................................................iv

INDEX OF AUTHORITIES ....................................................................vi

STATEMENT OF THE CASE ..................................................................1

STATEMENT REGARDING ORAL ARGUMENT .................................2

STATEMENT OF THE ISSUES ..............................................................2

STATEMENT OF FACTS ........................................................................3

SUMMARY OF THE ARGUMENT .........................................................6

ARGUMENT .............................................................................................9

I.     ISSUE ONE: The Lower Court Erred Because a Reasonable Juror Could Have Found—As This Jury Actually Found—That Appellee Did Not Intend the Payments to Spencer to Constitute "Political Contributions," Irrespective of How the Money was Ultimately Spent by Wooten ........................................9

     A.    The lower court ignores the fact that the defensive theory at trial was that these payments were not political contributions ......................................10

     B.    As charged here, bribery is an inchoate offense...................15

     C.    The lower court misconstrues the bribery statute as it relates to proof concerning a "political contribution."..........19

TABLE OF CONTENTS, Continued

D. The proper standard of review for legal sufficiency challenges ...................................................................26

    1. *Jackson v. Virginia*.....................................................26

    2. The law of parties......................................................28

    3. The lower court misapplies *Jackson*...........................29

II. ISSUE TWO: The Evidence at Trial Was Legally Sufficient For a Rational Juror to Find, Beyond a Reasonable Doubt, All of the Elements of Bribery .............................................................34

III. ISSUE THREE: The Evidence at Trial Was Legally Sufficient to Affirm Appellee's Convictions for Engaging in Organized Criminal Activity and Money Laundering ....................................38

PRAYER FOR RELIEF .......................................................................38

CERTIFICATE OF SERVICE ...........................................................40

CERTIFICATE OF COMPLIANCE WITH TEXAS RULE OF APPELLATE PROCEDURE 9.4 .........................................................41

# INDEX OF AUTHORITIES

## Cases

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) ................. 26, 31

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007) .................... 27

*David Cary v. State*, 460 S.W.3d 731 (2015) ................................ passim

*Delay v. State*, 443 S.W.3d 909 (Tex. Crim. App. 2014) ........................ 29

*Ervin v. State*, 331 S.W.3d 49 (Tex. App.–Houston [1st Dist.] 2010) .... 27

*Garza v. State*, 841 S.W.2d 19 (Tex. App.—Dallas 1992) ...................... 28

*Gear v. State*, 340 S.W.3d 743 (Tex. Crim. App. 2011) ......................... 27

*Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991) ....................... 32

*Guevara v. State*, 152 S.W.3d 45 (Tex. Crim. App. 2004) ...................... 28

*Hayes v. State*, 265 S.W.3d 673 (Tex. App.–Houston [1st Dist.] 2008) .28

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) ......................... 27

*Hubbard v. State*, 668 S.W.2d 419 (Tex. App.—Dallas 1984) ................ 18

*Isassi v. State*, 330 S.W.3d 633 (Tex. Crim. App. 2010) ................... 27, 33

*Jackson v. Virginia*, 443 U.S. 307 (1979) ........................................ 1, 7, 27

*Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637 (Tex. App.—

Houston [1st Dist.] 2014) ................................................................ 31

*Martinez v. State*, 696 S.W.2d 930 (Tex. App.—Austin 1985) 15, 16, 18, 19

*Mustard v. State*, 711 S.W.2d 71 (Tex. App.—Dallas 1986) ............ 18, 21

*Patterson v. State*, 950 S.W.2d 196 (Tex. App.—Dallas 1997) .............. 29

*Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000) ....................... 32

*Prystash v. State*, 3 S.W.3d 522 (Tex. Crim. App. 1999) ....................... 14

*Ransom v. State*, 920 S.W.2d 288 (Tex. Crim. App. 1994) .................... 29

*Stacy Cary v. State*, No. 05-12-01421-CR, 2014 WL 4261233 (Tex. App.—Dallas 2014) ................................................................. 2, 8, 35

*Trenor v. State*, 333 S.W.3d 799 (Tex. App.–Houston [1st Dist.] 2010) 29

## Statutes

Tex. Election Code § 251.001 ................................................. 20, 21, 32

Tex. Pen. Code § 36.02(a)(1)–(3) ............................................. 25

Tex. Pen. Code § 36.02(a)(4) ....................................................... 25

Tex. Pen. Code Ann. §§ 7.01(a), 7.02(a)(2) ............................... 28

Tex. Penal Code § 36.02(a) ....................................................... 34

Tex. Penal Code § 36.02(a)(2) ................................................... 15

Tex. Penal Code § 36.02(d) ......................................................... 9

**Other Authorities**

Model Penal Code § 240.1 ..................................................................18

## STATEMENT OF THE CASE

This appeal arises from a criminal conviction in the 366th Judicial District Court of Collin County, Texas. Following a jury trial, Appellee, David Cary, was convicted of one count of engaging in organized criminal activity under section 71.02(a) of the Penal Code, six counts of bribery under section 36.02 of the Penal Code, and one count of money laundering under section 34.02 of the Penal Code. 2 CR 654–58, 681–96.[1] Appellee was sentenced by the jury in each count to fourteen years' imprisonment, all sentences to run concurrently. 10 RR 113–16; 1 CR 666–76. Appellee appealed. 2 CR 1027.

On March 25, 2015, after finding the evidence to be legally insufficient under the standard set forth in *Jackson v. Virginia*,[2] the court of appeals reversed the trial court's judgment of conviction and sentence on all counts, and entered a judgment of acquittal. *Cary v. State*, 460

---

[1] "CR" refer to the Clerk's Record of papers filed in the trial court, preceded by the volume number and followed by the page number(s). "RR" refers to the Reporter's Record of the transcribed trial proceedings which occurred April 16, 2013 through April 26, 2013, preceded by the volume number and followed by the page number(s).

[2] 443 U.S. 307 (1979).

1

S.W.3d 731 (Tex. App.—Dallas Mar. 25, 2015) ("*David Cary*"). The State did not seek rehearing. This Court granted the State's petition for discretionary review (PDR). Order, *David Cary v. State*, PD-1341-14 (Tex. Crim. App. Mar. 25, 2015).

## STATEMENT REGARDING ORAL ARGUMENT

The Court has already indicated that it would permit oral argument. *Id*. The State notes, however, that there is a related appeal involving Appellee's spouse, which is presently pending in *Stacy Cary v. State*, PD-1341-14 ("*Stacy Cary*"), addressing nearly identical legal issues, on a substantially similar record. *See Stacy Cary v. State*, No. 05-12-01421-CR, 2014 WL 4261233 (Tex. App.—Dallas 2014) (the "*Stacy Cary* opinion"). Depending on the timing and nature of the Court's decision in the *Stacy Cary* appeal, oral argument may be unnecessary.

## STATEMENT OF THE ISSUES

1. The lower court erred because a reasonable juror could have found—as this jury actually found—that Appellee did not intend the relevant payments to Spencer to constitute "political contributions," irrespective of how those payments were ultimately spent by Wooten.

2. The evidence at trial was legally sufficient for a rational juror to find, beyond a reasonable doubt, all of the elements of bribery.

3. The evidence at trial was legally sufficient to affirm Appellee's convictions for engaging in organized criminal activity and for money laundering.

## STATEMENT OF FACTS

The reporter's record in this appeal is lengthy, and includes the testimony of numerous witnesses at trial, as well as voluminous documents admitted in evidence. The lower court incorporated by reference the 23-page summary of evidence from the *Stacy Cary* opinion, since the evidence presented in both cases were nearly identical.[3] *David Cary*, 460 S.W.3d at 733 (citing *Stacy Cary*, 2014 WL 4261233). In sum, the evidence establishes that Appellee had ongoing litigation before Judge Sandoval in the 380th District Court in Collin County, and was

---

[3] Additionally, the State summarized in its reply brief before the lower court the testimony from David Stinnett, an employee with Appellee's former company, and Brian Webb, President of the Texas Family Law Foundation, was provided by the State; neither of the two witnesses were called to testify in *Stacy Cary*. *Compare* State's Br. at 45–48, *with Stacy Cary*, 2014 WL 4261233 at *3–26, 11 n. 8 (describing testimony of Stacy Cary's brother, who did not testify in Appellee's case).

dissatisfied by several adverse rulings in that litigation.[4] Appellee developed a scheme to identify and to bribe a judicial candidate who would challenge Judge Sandoval in the upcoming election, and ensure that Appellee's family would receive favorable rulings in their litigation pending before Judge Sandoval's court. Namely, Appellee caused approximately $150,000 to be paid to an intermediary—James Stephen Spencer[5]—to offer, confer, or agree to confer a benefit—ultimately, to Suzanne Wooten[6]—as consideration for Wooten's act of proceeding or continuing to run for office as a state district judge, or for presiding over and issuing favorable rulings to Appellee in cases before her as judge. To disguise these payments, Appellee's spouse Stacy created a fictitious consulting agreement with Spencer,[7] supported by invoices—disclosed in pre-trial discovery by both Spencer and Stacy—for "work" performed by

---

[4] 2 RR 99–101, 105–06, 112–122, 124–27, 129–36; 3 RR 189–95, 199–201; 8 RR 152–54; *see* 8 RR 192–93.

[5] 3 RR 247–48; 4 RR 41–43, 65.

[6] 3 RR 204–10 (attorney Michael Puhl declined to run), 145–47 (same), 210–12 (attorney Brian Loughmiller also declined); 212–18 (discussions with Wooten).

[7] State's Exhibit ("SX") 130 (11 RR at WOS01547–48); 3 RR 195–96, 237–41, 230, 232, 243.

4

Spencer, matching the dates and monetary amounts transferred from Stacy to Spencer.[8] At trial, Spencer defended his consulting work for Stacy,[9] and stated his view that the income he had "earned" pursuant to that consultation agreement as "his" money, free to be spent on Wooten's campaign as her campaign manager under a turnkey agreement.[10] Spencer testified he intentionally did not discuss his campaign work with the Carys, or his Cary-consulting work with Wooten.[11]

The jury was charged that Appellee could be found guilty as either a principal or party to the bribery offenses, acting in concert with his spouse Stacy Cary. For purposes of this appeal, Appellee's bribery convictions constituted a legal predicate for the remaining counts, and hence, a finding of legal insufficiency as to the bribery counts led the

---

[8] 3 RR 241–52; 5 RR 115–16; *see* 4 RR 17–21, 121.

[9] 3 RR 246–47, 195–96, 237–41, 248–50, 253–65, 264–68; 4 RR 168, 20–22; 5 RR 12–17.

[10] 4 RR 41–44, 174; *see id.* at 128–36 (denying he had referred to Appellee and Stacy as sources for Wooten's campaign, in an internal email), 88–89 (stating he had believed Wooten would pay him back—and did pay him back—for the campaign costs he fronted); *see* 7 RR 24–25, 28–29; *see also* SX 62 (campaign finance reports filed by Wooten) (11 RR at OAG/WOS 020758–59, 020805–06, 020852–53, 020899–900, 020908–09).

[11] 4 RR 173–74, 127–29.

lower court to reverse and acquit all the remaining counts. *David Cary*, 460 S.W.3d at 738–41.

## SUMMARY OF THE ARGUMENT

The court of appeals held that the evidence at trial was legally insufficient to sustain the conviction for all counts because, it reasoned, the State's proof at trial established that Appellee's payments to Wooten were *ultimately* used by third parties to fund Wooten's campaign for judge. As a result, the lower court reasoned, "the State did not meet its burden to prove bribery beyond a reasonable doubt by something other than a political contribution." And because bribery was the primary legal predicate for the remaining counts, the lower court determined that the evidence was legally insufficient to sustain Appellee's conviction for those counts, too.

The lower court's analysis suffers from several fundamental defects. First, the lower court misconstrues the bribery statute as it relates to proof concerning a "political contribution." In other words, the lower court supplanted the actual measure of proof as governed by the relevant statutes, i.e., the defendant's subjective *intent* about the

6

purpose of a particular payment, with the court's post-hoc determination

regarding the *objective legal status* of those payments. Second, the lower

court appears to have misconstrued the measure for legal sufficiency

under *Jackson v. Virginia*. Specifically, the lower court re-weighed the

evidence presented at trial to animate a determination *rejected* by a

properly-instructed jury—by resolving all credibility choices and

inferential conflicts *against* those explicit and implicit determinations.

This was improper. When the jury's verdict is analyzed pursuant to the

correct legal measure, as the majority did in the *Stacy Cary* appeal, the

lower court's error becomes plain.

Perhaps more troubling, the opinion below is inconsistent with the

distinct, although substantively identical,[12] panel decision in *Stacy Cary*.

Although the *Stacy Cary* opinion is unpublished, two justices on the

*Stacy Cary* panel resolved an almost identical question of legal

sufficiency under *Jackson* against Stacy Cary, and *affirmed* her

conviction—on a materially identical record. *See Stacy Cary*, 2014 WL

---

[12] Without adopting the lower court's analysis on this point, the State directs the Court to the lower court's description of the nominal differences between the two prosecutions. *See David Cary*, 460 S.W.3d at 733, n.1.

7

4261233, at \*33–34. In other words two justices on the *Stacy Cary* panel determined that a rational juror could have found the State disproved the political contribution element beyond a reasonable doubt, on substantially the same evidence. While the panel in this proceeding was not technically bound by the *Stacy Cary* opinion (because the *Stacy Cary* opinion is unpublished), the moral and logical tension between the two outcomes is problematic. For example, how can Stacy Cary be guilty while Appellee, her spouse, is acquitted of the same crimes, on essentially the same evidence? Moreover, the fact that the *Stacy Cary* panel found legally sufficient evidence to support the convictions in that appeal is, by definition, considerable support for the State's argument that the panel in this appeal resolved the question incorrectly—assuming, *arguendo*, that the majority justices on the *Stacy Cary* panel are themselves rational.

## ARGUMENT

I. **ISSUE ONE: The Lower Court Erred Because a Reasonable Juror Could Have Found—As This Jury Actually Found—That Appellee Did Not Intend the Payments to Spencer to Constitute "Political Contributions," Irrespective of How the Money was Ultimately Spent by Wooten.**

There are four basic alternatives to proving bribery under the relevant statute, each contained in Sections 36.02(a)(1) through (4) of the Penal Code. Here, the State charged Appellee under Sections 36.02(a)(1) and (a)(2),[13] which thus triggered Section 36.02(d):

> It is an exception to the application of Subdivisions (1), (2), and (3) of Subsection (a) that the benefit is a political contribution as defined by Title 15, Election Code, or an expenditure made and reported in accordance with Chapter 305, Government Code.

Tex. Penal Code § 36.02(d); *see id.* at § 2.02 (a), (b).[14] For purposes of this appeal, the question then becomes whether a reasonable juror could conclude, beyond a reasonable doubt, that the payments made by Appellee were not "political contributions."

---

[13] 1 CR 159–64.

[14] Where a statute expressly includes the provision, "It is an exception to the application of," the State "must negate the existence of [that] exception in the accusation charging commission of the offense and prove beyond a reasonable doubt that the defendant or defendant's conduct does not fall within the exception."

9

On this issue, the lower court found that the evidence adduced at trial was insufficient to sustain Appellee's six convictions for bribery. *David Cary*, 460 S.W.3d at 738. Specifically, the lower court found that "the only evidence of a benefit to Wooten in this case was that Stacy Cary gave money to Spencer and *Spencer used it in connection with Wooten's campaign*." *Id.* at 736 (emphasis added). The court then continued:

> We conclude that the State's evidence proved that the only benefits to Wooten were the transfers from Stacy Cary to Spencer, which the State argued were payments made to fund her campaign. As a result, the State did not meet its burden to prove bribery beyond a reasonable doubt by something other than a political contribution.

*Id.* at 738. As the State will demonstrate below, this analysis is flawed for several reasons.

A. **The lower court ignores the fact that the defensive theory at trial was that these payments were *not* political contributions.**

Here, the defense's theory at trial was that the transfer of payments to Spencer was actually compensation from Appellee's wife for his supposed work under an alleged consulting agreement, and that Appellee had no knowledge, *whatsoever*, that Spencer used that money in relation to Wooten's decision to run for office. *E.g.*, SX 130; 4 RR 167–73

10

(Appellee's counsel confirming the projects and work Spencer provided pursuant to the Stacy Cary-agreement), 5 RR 12–20 (same); 4 RR 173–74 (Spencer deliberately did not introduce Wooten and the Carys to each other), 174 (affirming he "ke[pt] the business of one client separate from the business of another client"—Stacy Cary and Wooten—as was his usual practice), 174 (Spencer could do "[a]nything [he] chose" with the Cary payments because he "earned it" for services rendered); 175 (Appellee's counsel eliciting Spencer's confirmation that "[t]he topic never came up," regarding Wooten or campaign funding)]. This point bears repeating: Appellee's position at trial was necessarily that the payments were *not* intended as political contributions because Stacy Cary paid Spencer for unrelated consulting services and had no knowledge of Spencer's activities in support of Wooten's campaign. *See, e.g.*, *id.*; 4 RR 172 (Appellee's counsel asking, "Just to be clear, that was not $50,000 that you were receiving from Ms. Cary so that you could fund the Wooten campaign?"), 172 (follow-up question of "No connection – you hadn't talked about it. In your mind, there was no connection?"), 173 (Appellee's counsel confirming Spencer was "sure" when he denied ever

11

"tell[ing] one client that you were working for the other client"), 174–75 (Appellee's counsel asking Spencer, "Did either Mr. or Mrs. Cary ever direct you to use the money they were paying you for your services to, in any way, fund a campaign or have anything to do with Judge Wooten?"— which Spencer denied); 5 RR 118 (Spencer answering affirmatively in re-cross-examination by Appellee's counsel, whether the January payment of $50,000 from Stacy was for consulting services, and that "[T]here was no connection between that and a judicial campaign, correct?").

In other words, Appellee now appears to concede on appeal that the consulting agreement was a *subterfuge*, *fabricated* several years after its purported effective date to provide a *false* explanation for the transfers of money to Spencer. *See* Appellant's Br. at 19–23, *David Cary v. State*, No. 05-13-01010-CR (Tex. App.—Dallas May 20, 2014) ("Appellant's Br."). But such an approach fundamentally contradicts his theory of the defense at trial, and may well have been disastrous if proffered to the jury. *See*, e.g., 4 RR 172–75, 153–54 (Spencer admitting erroneous reference within consulting agreement meant for Appellee's wife, to Appellee's company), 148–49 (Appellee's counsel introducing two

12

versions of Appellee's business card, supporting "typographical" error in the Stacy Cary-agreement was due to Spencer having glanced at Appellee's card), 155–56 (Appellee's counsel asking, "Now, this is an engagement letter, but is this a requirement that she had to pay you $250,000?"), 167–73 (Appellee's counsel confirming the projects and work Spencer provided pursuant to the Stacy Cary-agreement), 186–87 ("Of the money that Stacy Cary paid you, this $150,000, at any time did you ever write a check or advance any of that money to Judge Wooten?", to which Spencer replied, "No, sir."); *see also* 9 RR 39–41 (in closing argument, attempting to discredit the State's evidence that Appellee, his wife, and Spencer "are making [the engagement letter] up"), 49–54 (same, and reviewing the work Spencer provided to Stacy), 66–67 (arguing Wooten's campaign finance reports correctly reported all sources and expenditures).

Moreover, Appellee's defensive theory (i.e., that the payments to Spencer were compensation for unrelated consulting services) necessarily required the State to prove that those payments were actually made for the benefit of Wooten, pursuant to Appellee's corrupt

intentions under the bribery statute. Thus, in reliance on the defense theory, the prosecutor attempted to disprove it by tracing those payments through Spencer to Wooten, including Appellee's corrupt purposes thereto. Now on appeal, Appellee essentially advances a new jury-argument in the court of appeals, one that he affirmatively declined to pursue at trial. Specifically, Appellee contended in the court below that a hypothetical, reasonable juror would be *required* to conclude that the payments were political contributions, *see* Appellant's Br. at 19–23, despite the fact that he told the *actual* jury they were not. *E.g.*, 4 RR 172–75 (cross-examination of Spencer), 5 RR 110 (closing argument). Remarkably, the lower court then "acquitted" Appellee on this basis.

Appellee should not be permitted to have it both ways. Appellee should be estopped from re-trying his case in the appellate courts, in the guise of *Jackson* review. *C.f. Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) ("[T]he law of invited error estops a party from making an appellate error of an action it induced.").

### B.    As charged here, bribery is an inchoate offense.

The relevant provisions here define bribery as occurring when a person intentionally or knowingly offers, confers, or agrees to confer on another, any benefit as consideration for (1) the recipient's decision, vote, recommendation, or other exercise of official discretion in a judicial proceeding, or (2) the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant. Tex. Penal Code § 36.02(a)(2), (1) (West 2008)[15] (respectively); *see* 2 CR 634. Also, as previously established, it is an exception to the application of either of those provisions that the benefit is a "political contribution" as defined by the Election Code. Tex. Penal Code § 36.02(d).

When it is alleged under the bribery statute that an individual offers, confers, or agrees to confer on another, and the jury is properly instructed that proof of any one of the three alleged acts would warrant conviction, no proof of a bilateral agreement is needed. *Martinez v. State*, 696 S.W.2d 930, 933 (Tex. App.—Austin 1985, pet. ref'd) (distinguishing

---

[15] Given that the law in effect at the time an offense is committed is controlling, the State cites the relevant criminal statutes from 2008.

*McCallum v. State*, 686 S.W.2d 132 (Tex. Crim. App. 1985)).[16] Taking a position contrary to the Third Court of Appeals' holding, Appellee argued in the court below that *McCallum* stood for the proposition that the "as consideration" language in the bribery statute means the State must *always* prove "a bilateral agreement—in effect an illegal contract to exchange a benefit as consideration for the performance of an official function." *See* Appellant's Br. at 17. The lower court's focus on the consideration provided to Wooten, and its ultimate use in her campaign, suggests that the court agreed with Appellee. *E.g., David Cary*, 460 S.W.3d at 736, 738 (no mention of evidence supporting the jury's inference that Appellee had no specific intent for campaign use).

---

[16] After careful consideration, we find that *McCallum* is factually and legally distinguishable from the instant cause. In *McCallum*, the indictment alleged only that the defendant conferred the benefit on the recipient. Under that indictment, proof that the defendant offered the alleged benefit was not sufficient to convict. The instant indictment, on the other hand, alleges that appellant solicited, agreed to accept, and accepted the benefit from Zepeda, and the jury was properly instructed that proof of any one of the three alleged acts would warrant conviction. Thus, it was not necessary for the State to prove that appellant agreed to accept or accepted the alleged benefit, and evidence that appellant merely solicited the benefit will support the conviction. *Martinez*, 696 S.W.2d at 932.

A careful analysis of the Court's *McCallum* opinion, however, establishes that Appellee is incorrect. *See supra*, note 16. And given the confusion with the *MacCallum* holding, this appeal is an opportunity for the Court to clarify the distinctions recognized by the lower courts of appeals in Martinez and Stacy Cary—namely:

> Under § 36.02, a person commits the offense of bribery if he intentionally or knowingly offers or solicits a benefit as consideration for a variety of official acts or omissions. Common sense dictates that when it is alleged and proved that the defendant offered or solicited a proscribed benefit, it is not necessary to further prove that the offer or solicitation resulted in a bilateral arrangement or unlawful contract with the other party. *The offense of bribery is complete when the offer or solicitation is made*.

> The relevant language of § 36.02 was taken verbatim from § 240.1 of the Model Penal Code. In Model Penal Code § 240.1, Comment 4(a) (Official Draft and Revised Comments, 1980), it is stated:

>> The offense of bribery is defined in a manner that includes a completed agreement between the person who offers the bribe and the person who receives it. *It also permits prosecution of inchoate conduct intended to achieve that objective. The terms "offers" and "solicits" clearly refer to such inchoate behavior and are designed to include what might be regarded as an attempt to give or to receive a bribe*.

17

*Martinez*, 696 S.W.2d at 932–33 (emphasis added) (quoting Model Penal Code § 240.1, Comment 4(b), (c)); *accord Mustard v. State*, 711 S.W.2d 71, 75 (Tex. App.—Dallas 1986, no pet.) ("The offense of bribery focuses on the mental state of the actor, and is complete if a private citizen, by offering, conferring, or agreeing to confer intends an agreement.") (citing *Hubbard v. State*, 668 S.W.2d 419, 421 (Tex. App.—Dallas 1984, pet. granted)).

This approach makes particular sense given the manner in which law enforcement entities often detect and prosecute bribery. Take, for example, a hypothetical defendant who decides to bribe a judge to influence the outcome of his own criminal prosecution. Assume that in order to execute his scheme, the defendant unwittingly contacts and then utilizes intermediaries, who are actually undercover police officers. Indeed, assume the ultimate target of the bribe (i.e., the judge), was not even *aware* of the undercover sting operation conducted by police to document the crime.[17] Because bribery is an inchoate offense—at least as

---

[17] Indeed, this hypothetical is premised on an actual bribery prosecution that occurred in Austin, Texas, which was heavily reported in the media.

18

charged here—it matters not whether there was a "meeting-of-the-minds," or even whether the defendant's expectations regarding the judge's favorable rulings were rational or even *likely*. *See Martinez*, 696 S.W.2d at 932–33. Rather, as in both the hypothetical defendant's case and as charged here, so long as a rational juror could conclude that Appellee took an affirmative act in furtherance of his corrupt-intent-scheme, he is guilty of bribery.[18] *See id*.

### C. The lower court misconstrues the bribery statute as it relates to proof concerning a "political contribution."

With the preceding as background, the State turns to the first question: Whether a reasonable juror could conclude, beyond a reasonable doubt, that the payments made by Appellee were not "political contributions." Here, the jury in Appellee's trial was given the following

---

Members of the Los Zetas crime syndicate attempted to bribe the Honorable Judge Sam Sparks, a federal district judge in the Western District of Texas, Austin Division. *See e.g.*, Criminal Compl., *United States. v. Francisco Agustin Colorado Cebado*, *also known as Francisco Colorado, Jr.*, No. 1:13-cr-00458-DEW-2 (formerly No. 1:13-mj-00471-AWA) (W.D. Tex. Sep. 5, 2013), ECF No. 1; *see also Colorado-Cebado (2)*, No. A–13–CR–458 DEW, 2013 WL 5852621 at *1 (considering United States' Motion for Detention).

[18] This also assumes that the State has proven that the relevant payments were not political contributions, beyond a reasonable doubt. The State will analyze this issue below.

definitions related to "political contributions," which track the relevant statutes (and of which Appellee has not complained on appeal):

> "Contribution" means a direct or indirect transfer of money, goods, services, or any other thing of value and includes an agreement made or other obligation incurred, whether legally enforceable or not, to make a transfer. The term includes a loan or extension of credit, other than those expressly excluded by law, and a guarantee of a loan or extension of credit, including a loan described by law. The term does not include a loan made in the due course of business by a corporation that is legally engaged in the business of lending money and that has conducted the business continuously for more than one year before the loan is made or an expenditure required by law to be reported.

> "Political contribution" means a campaign contribution or an officeholder contribution.

> "Campaign contribution" means a contribution to a candidate or political committee *that is offered or given with the intent that it be used in connection with a campaign for elective office* or on a measure. Whether a contribution is made before, during, or after an election does not affect its status as a campaign contribution.

> "Expenditure" means a payment, distribution, loan, advance, reimbursement, deposit, or gift of money or any thing of value and includes a contract, promise, or agreement, whether or not legally enforceable, to make an expenditure.

2 CR 647 (emphasis added); *see* Tex. Election Code § 251.001(2), (3), (5), (6) (West 2008). In this case then, a "political contribution" is defined as

20

a "campaign contribution." Tex. Election Code § 251.001(2), (3), (5), (6). And, as relevant here, a campaign contribution is the direct or indirect transfer of something of value to a candidate (i.e., Wooten), "with the *intent* that it be used in connection with a campaign for elective office[.]" *Id.* (emphasis added).

The question under the plain language of the statute defining bribery is *not* whether—or how—a given payment is *actually* used in a campaign; rather, the question is whether the person who made, offered, or arranged the payment—and who otherwise acted with corrupt intent under the bribery statute—*subjectively intended* that the payment be used. In other words, the target-recipient's ultimate disposition of the money is not outcome determinative to the question of the briber's intent and purpose for making the payment. *Id.*

Here, each sum that Appellee either transferred or arranged to transfer constituted an independent, completed crime of bribery, dependent upon Appellee's subjective intent at *the moment* each payment was offered or conferred. *See Mustard v. State*, 711 S.W.2d 71, 75 (Tex. App.—Dallas 1986, pet. ref'd) ("The offense of bribery focuses on

21

the mental state of the actor, and is complete if a private citizen, by offering, conferring, or agreeing to confer intends an agreement"). In other words, the question of intent here focusses on the instant Appellee took the volitional act of transferring or arranging the transfer of each sum of money—*and* whether that intent encompassed the payment be used in connection with Wooten's campaign. Accordingly, the issue at hand is whether the State proved beyond a reasonable doubt that it was *not* Appellee's subjective intent to make a political contribution at the instant each payment was made.

Hence, if the jury concluded that Appellee possessed a corrupt intent when causing the transfer of money to Spencer—and also found that Appellee had a no specific expectation or *purpose* regarding Spencer or Wooten's *use* of the money, other than for Wooten to enter favorable decisions in Appellee and Stacy Cary's pending cases—Appellee's conviction must be affirmed. Although the undersigned has been unable

22

to locate precedent on this point, with all respect to the Court, no other interpretation makes sense.[19]

Indeed, the lower court arguably recognized this as the correct legal standard. *See David Cary*, 460 S.W.3d at 737–38 ("[I]f Stacy Cary transferred money to Spencer with the intent that it be used in connection with Wooten's campaign, then, by definition, the money is a political contribution"). Unfortunately, the lower court then insulated itself from the force and effect of its properly-stated rule of law, with the following recursive observation:

> The State argues on appeal that the payments to Spencer for Wooten's benefit should not be considered political contributions because the evidence demonstrates that appellant "deliberately engaged in several deceptive practices

---

[19] Take, for instance, the following hypothetical. A defendant decides to bribe a judge to influence the outcome in defendant's pending criminal case. To this end, the defendant purchases a penthouse condominium in downtown Austin, and transfers title to the judge as part of his scheme to influence the outcome of his criminal trial. Two days after obtaining title to the condominium, the judge sells it, and uses every dollar of the proceeds to fund her re-election campaign. Assume that the prosecutor proved corrupt intent. Under the lower court's view, a rational juror would be required to conclude the payment was a political contribution because the prosecutor would necessarily have proven that it was ultimately used, dollar-for-dollar, to fund a campaign. The better view is that the target's ultimate use may be relevant to determine a defendant's subjective intent—or not—depending on the facts of the case. However, the target's ultimate use is not determinative under the text of the statute.

23

> to prevent the funds from being traced to him." *We must confine our analysis, however, to the definitions found in the election code. And under the definition of "political contribution" in the election code, no exception is made for covert indirect transfers of money.*

*David Cary*, 460 S.W.3d at 737 (emphasis added). While the lower court correctly noted that the nature of a "political contribution" is not contingent upon the visibility of its source, the lower court essentially based its rejection of the State's argument on a restatement of its minor premise: that the relevant payments *were actually* political contributions, irrespective of Appellee's intentions thereto. *See id*. This point bears repeating: the court's analysis ultimately dispenses with the intent listed within the statutory definition of "campaign contribution"— and thus "political contribution"—as expressed in the Election Code, to which the lower court cites. Simply stated: according to the lower court, if a defendant bribes a public official (e.g., offers or transfers money with the specific intent of improperly influencing the public official), that payment is always a "political contribution" if ultimately *used* to fund that public official's campaign for office, regardless of the defendant's intent.

24

But that is not what the relevant statutes say. Under the controlling statutes in both the Election Code and Penal Code, an appellate court's post-hoc determination regarding the *objective legal status* of some payment to a public official is irrelevant. Rather, the subjective *intent* for the purpose of that payment, possessed by the transferor/arranger, is the foremost concern: in the Election Code, that the transfer is *intended* for use in connection with a campaign for elective office, in contrast with the Penal Code, that the transfer is either (a) *intended* to obtain a favorable decision or other exercise of official discretion from the candidate/elected official[20] or (b) *both* that the payment *is intended* for use in connection with a campaign AND that *both* the transferor and the recipient knew and agreed that the transfer was for a favorable decision or other exercise of official discretion from the candidate/elected official.[21]

Since the eventual disposition of Appellee's plainly surreptitious payments to Spencer is not dispositive to Appellee's subjective intent

---

[20] Tex. Pen. Code § 36.02(a)(1)–(3).

[21] Tex. Pen. Code § 36.02(a)(4).

regarding the purpose of those payments to Wooten, it matters not how an appellate court might later re-characterize those payments. This makes sense because the bribery statute attempts to criminalize a defendant's inchoate *effort* to exert corrupt influence over a public official—and if the defendant does not subjectively believe a payment to constitute a "political contribution"—or care for how that payment will be spent—then a crime has been committed, whether or not that payment was used in a campaign.

This is the fundamental misconception upon which the lower court foundered. Indeed, this key statutory interpretation is also the reason the majority in the *Stacy Cary* appeal affirmed Stacy Cary's conviction, and is the reason this Court should reverse the court below.

### D. The proper standard of review for legal sufficiency challenges

#### 1. *Jackson v. Virginia*

This Court has mandated that the sufficiency of evidence standard established in *Jackson v. Virginia*, is the only standard to be used in a criminal case. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.); *see Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim.

26

App. 2011). On review, all evidence, and any reasonable inferences from that evidence is viewed in the light most favorable to the verdict, to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Gear*, 340 S.W.3d at 746.

The jury is the exclusive judge of witness credibility and the weight of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The reviewing court must resolve or reconcile conflicts in the evidence *in favor* of the verdict. *Id.*; *Jackson*, 443 U.S. at 326. "An appellate court determines whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Ervin v. State*, 331 S.W.3d 49, 55 (Tex. App.–Houston [1st Dist.] 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). The appellate court must view both direct and circumstantial evidence equally when reviewing the record based on a sufficiency of the evidence claim. *Jackson*, 443 U.S. at 326; *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). The reviewing court does not resolve any conflict

27

of fact, reweigh the evidence, or evaluate the credibility of the witnesses. *Garza v. State*, 841 S.W.2d 19, 21 (Tex. App.—Dallas 1992, no pet.).

Important, too, when a court's charge authorizes the jury to convict on more than one theory—as the charge did here—the verdict of guilty will be upheld if the evidence is sufficient on any one of the charged theories. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

### 2. The law of parties

The jury charge instructed that Appellee may be found criminally responsible for bribery, either as a primary actor or under the law of parties. 2 CR 649–51. A party may be criminally responsible under the law of parties in several ways. *Hayes v. State*, 265 S.W.3d 673, 678 n.4 (Tex. App.–Houston [1st Dist.] 2008, pet. ref'd). "An individual is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both." Tex. Penal Code § 7.01(a). A person is also criminally liable for an offense committed by the conduct of another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to

28

commit the offense." *Id.* at § 7.02(a)(2). And as established below, a reasonable jury could have concluded as much here.

With respect to Sections 7.01 and 7.02(a)(2), a conviction under the law of parties requires a showing that, at the time of the offense, the parties acted together and contributed to a common purpose. *Patterson v. State*, 950 S.W.2d 196, 202 (Tex. App.—Dallas 1997, pet. ref'd). In other words, the State must show conduct constituting an offense, plus an act by the defendant "done with the intent to promote or assist such conduct." *Trenor v. State*, 333 S.W.3d 799, 806 (Tex. App.–Houston [1st Dist.] 2010, no pet.). To determine whether a defendant participated as a party, the Court may examine events occurring before, during, and after the commission of the offense and may rely on actions demonstrating an understanding to commit the offense. *See Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994).

### 3. The lower court misapplies *Jackson*.

Here, the court of appeals cited the *Jackson* standard obliquely, with reference to *Delay v. State*.[22] *David Cary*, 460 S.W.3d at 733–34. The

---

[22] 443 S.W.3d 909, 912 (Tex. Crim. App. 2014).

lower court correctly noted, "[S]ometimes appellate review of legal sufficiency involves simply construing the reach of the applicable penal provision in order to decide whether the evidence, even when viewed in the light most favorable to conviction, actually establishes a violation of the law." *Id.* at 733–39. But when it "simply constru[ed]" that reach, the court failed to acknowledge that the relevant fact issue concerned subjective intent, and also failed to properly frame the evidence at trial in *favor* of the verdict. Instead, the appellate court focused on only evidence tending to *negate* the jury's historic determination that the payments were not intended to be a "political contribution," both ignoring and discarding the jury's *actual* decision. *E.g.*, *David Cary*, 460 S.W.3d at 738 (the jury could not have relied on Appellee's deceptive conduct in preventing the payments from being traced back to him because "the State's theory [behind charging Appellee with bribing Wooten] was that the Carys funded Wooten's campaign, and the jury was asked whether the payments were made to Wooten as consideration for various actions on her part, including issuing rulings favorable to the Carys"). Second, the lower court gave too much weight to the consideration provided

Wooten, and how those payments were ultimately used in her campaign. *E.g., id.* at 736, 738 (showing that the lower court focused almost exclusively on the manner in which the "benefit" to Wooten was eventually used, and not on the evidence supporting the jury's inference that Appellee did not intend specific use of that benefit).

In essence, the lower court appears to have used the standard for factual sufficiency rejected by this Court in *Brooks*. Under that now-discarded standard, the reviewing court was not required to defer to either the jury's credibility or weight determinations, and the reviewing court could sit as a thirteenth juror and "disagree with a jury's resolution of conflicting evidence and with a jury's weighing of the evidence." *Brooks*, 323 S.W.3d at 899 (internal quotations omitted). Alternatively, the lower court's approach bears similarities to the factual sufficiency standard used in civil cases. *E.g., Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637, 653 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ("When the appellants attack the factual sufficiency of an adverse finding on an issue on which they did not have the burden of proof, the appellants must demonstrate the finding is so contrary to the

31

overwhelming weight of the evidence as to be clearly wrong and manifestly unjust.").[23] Neither of these approaches is available here.

To the extent that the lower court opines that Appellee's payments were political contributions as a *matter of law*, the court cites no authority for this proposition. Moreover, such a conclusions ignores the literal text of the relevant statute, which requires a *factual* inquiry limited to the jury's determination regarding Appellee's subjective intent. *See* Tex. Election Code § 251.001(2), (3), (5), (6). In other words, the lower court provides no support for the proposition that an appellate court can supplant a jury's historic factual determination regarding subjective intent with its own contrary view of the evidence, as a "matter of law."

Furthermore, the lower court's repeated reliance on the State's "theory" at trial when performing its *Jackson* review is flawed, too. While consideration of a prosecutor's arguments and theories may be relevant to certain appellate claims, it is not outcome determinative to the

---

[23] The lower court decision also evokes comparison to the long discarded *Geesa* standard. *See Geesa v. State*, 820 S.W.2d 154, 161–62 (Tex. Crim. App. 1991), *overruled by Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000) (rejecting the "any reasonable hypothesis" analytical construct in circumstantial evidence cases to review evidentiary sufficiency).

question of legal sufficiency. Rather, review of legal sufficiency considers *evidence* and valid inferences in relation to a jury charge and the outcome the jury actually achieved. *Isassi*, 330 S.W.3d at 638; *Jackson*, 443 U.S. at 326. Indeed, a jury is not even *permitted* to utilize the arguments of counsel as an evidentiary foothold to then render reasonable deductions from the evidence. *See Bourg v. State*, 484 S.W.2d 724, 726 n.1 (Tex. Crim. App. 1972) ("After a concise ruling it is often good practice for the trial court to instruct the jury that while counsel may make reasonable deductions from the evidence *that argument of counsel is not evidence and should not be considered as such*, that the jurors are the judges of the facts, the credibility of the witnesses and weight to be given to their testimony.") (emphasis added). Arguments and theories are not evidence. *See id.*

Perhaps more troubling, if the lower court is correct, and if the arguments of counsel may be considered for purposes of *Jackson* sufficiency review, then the court necessarily erred by ignoring the theories and arguments of the defense, which affirmatively contradict the lower court's acquittal. *E.g.*, 9 RR 39–41, 49– 54, 66–67 (in arguing

33

Wooten's campaign finance reports were correct, implied all donors and funding sources were correctly identified). Indeed, if the argument of counsel was relevant to the question of legal sufficiency, such an approach would undoubtedly redound to the great benefit of the State in many appeals.

As the State will demonstrate in the next section, when the evidence is properly framed, Appellee's convictions meet the *Jackson* standard.

## II. ISSUE TWO: The Evidence at Trial Was Legally Sufficient For a Rational Juror to Find, Beyond a Reasonable Doubt, All of the Elements of Bribery.

When the evidence is properly analyzed under the *Jackson* standard, and when direct and inferential evidence against the jury's verdict is ignored, a rational juror could have found, beyond a reasonable doubt, all of the elements of the charged offenses. Specifically, that (1) Appellee knowingly offered money to Wooten with the specific intent of exerting improper and corrupt influence over her in preexisting judicial proceedings, and (2) that the payments were not political contributions. *See* Tex. Penal Code § 36.02(a), (d).

Indeed, this is what the *Stacy Cary* panel held on a substantially identical record:

> The evidence showed Stacy did not transfer funds directly to Wooten's campaign; Stacy's contention was that she transferred funds to Spencer to compensate him for his work under the purported consulting agreement. [An Assistant General Counsel for the Texas Ethics Committee] testified as to what constitutes a lawful political contribution under the election code in a race for a Collin County district court bench in 2008. According to [him], a political contribution to a candidate for a Collin County bench could not exceed $2,500 for the election cycle. Each of the six transfers of funds from Stacy to Spencer that were funneled to the Wooten campaign vastly exceeded the amount of an allowable political contribution to a judicial candidate, and the transfers of funds were not reported by Wooten as political contributions under the election code on any campaign finance report or amended campaign finance report filed with the Ethics Commission or as loans under the election code on any personal financial statement filed with the Ethics Commission. *See* Tex. Elec. Code Ann. § 253.155(b) (West 2010).

> Based on the applicable standard of review, a rational jury could have reasonably found that Stacy's payments were not political contributions as defined by the statute. Stacy does not argue otherwise on appeal.

*Stacy Cary*, 2014 WL 4261233, at \*34 (emphasis added). If the Justices in the *Stacy Cary* majority are rational, then so too was the jury.

35

In sum, a rational jury could have found that Appellee did not intend for the predicate transfers to Spencer to be used in connection with Wooten's campaign, and instead intended that the payments to Spencer be used to obtain, by any means necessary, (1) a person who would challenge the incumbent judge of the 380th Judicial District Court, despite the odds stacked against succeeding in such a challenge, and/or (2) a judge who would rule favorably in Appellee's custody and visitation proceedings, and/or rule in favor of his spouse Stacy. In other words, when the evidence supporting the jury verdict is properly framed, a rational juror could have determined that Appellee had no specific intent that the payments made by his spouse be used specifically in connection with the campaign. Such a juror finding constitutes legally sufficient evidence of bribery.

Finally, to the extent that Appellee might contend that his subterfuge could just as easily have been interpreted by a rational juror as an effort to avoid the contribution limits under the Election Code, this fails under its own weight. First, Appellee should be required to explicitly concede his own subterfuge before urging this Court to impute its

inference to the jury. Second, this contention again smacks of *Geesa*—ultimately, that the State be required to disprove a competing rational inference. To be clear, the State is not arguing against its duty to disprove the exception outlined in Section 36.02(d) of the Penal Code—that the payments were political contributions. Rather, the "competing rational inference" which Appellee (and the lower court) proposes that the State must disprove, is that the "contract" between Spencer and Appellee's wife was created to cover up Appellee's *actual misdemeanor criminal offense of exceeding the statutory limitations for campaign contributions*—even where Appellee made no such argument at trial. But lastly, such an argument goes too far: if the jury could infer from Appellee's deception that he was attempting to avoid the minor criminal sanction associated with contribution reporting or limits, then the jury could also rationally infer that Appellee used subterfuge to avoid public exposure of his corrupt intentions under the bribery statute.

III. **ISSUE THREE: The Evidence at Trial Was Legally Sufficient to Affirm Appellee's Convictions for Engaging in Organized Criminal Activity and Money Laundering**.

The lower court's resolution of the EOCA and money laundering counts was necessarily premised on its erroneous determination that there was legally insufficient evidence to convict Appellee of bribery—a predicate offense for both EOCA and money laundering. *David Cary*, 460 S.W.3d at 738-41. Hence, if this Court reverses the lower court's determination that the evidence was legally sufficient to support Appellee's bribery conviction, then the Court should necessarily reverse the lower court on this basis, too.

## PRAYER FOR RELIEF

For the foregoing reasons, the State respectfully requests that this Court reverse the lower court, and affirm Appellee's convictions on all counts.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

38

ADRIENNE McFARLAND
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

/s/ Joseph P. Corcoran
JOSEPH P. CORCORAN\*
Supervising Attorney
  for Non-Capital Appeals
Criminal Appeals Division
State Bar No. 00793549
Joseph.Corcoran@TexasAttorneyGeneral.gov

CARA HANNA
Assistant Attorney General

P. O. Box 12548, Capitol Station
Austin, Texas  78711
Tel.: (512) 936-1400
Fax: (512) 936-1280

ATTORNEYS FOR THE STATE

\*Lead Counsel

## CERTIFICATE OF SERVICE

Pursuant to Rule 9.5(b)(1) of the Texas Rules of Appellate Procedure, I do hereby certify that if the email address of attorneys designated below is on file with the electronic filing manager, a true and correct copy of the foregoing notice was served electronically by that electronic filing manager, on the following attorneys via electronic mail:

John Michael Helms Jr.
Attorney for Appellee

Moreover, I do hereby certify that if the email addresses for the designated attorneys are not on file with the electronic filing manager, a true and correct copy of the foregoing pleading was served by email, addressed to:

John Michael Helms Jr.
john@johnhelmslaw.com

/s/ Joseph P. Corcoran
JOSEPH P. CORCORAN
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE WITH
## TEXAS RULE OF APPELLATE PROCEDURE 9.4

This brief complies with Tex. R. App. Proc. 9.4(i)(D) in that it contains 8,824 words, as calculated pursuant to Tex. R. App. Proc. 9.1(i), in Microsoft Word 2013, Century, 14 points.

/s/ Joseph P. Corcoran
JOSEPH P. CORCORAN
Assistant Attorney General